**2020 IL 124863**


# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____


(Docket No. 124863)

MATT SHARPE v. CRYSTAL WESTMORELAND, Appellee
(Kris Fulkerson, Appellant).

*Opinion filed September 24, 2020.*


JUSTICE GARMAN delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Kilbride, Karmeier, Theis, Neville, and Michael J. Burke concurred in the judgment and opinion.


**OPINION**

¶ 1   After A.S.'s father passed away, his civil union partner filed a petition in the circuit court of Madison County seeking visitation and an allocation of parental responsibilities as A.S.'s stepparent. The circuit court, after initially granting leave to intervene, certified two questions to the appellate court, both of which asked, in essence, whether a civil union partner is a "step-parent" as defined by the Illinois Marriage and Dissolution of Marriage Act's (Dissolution Act) (750 ILCS 5/101

*et seq.* (West 2016)) provisions that grant stepparents standing to seek visitation and parental responsibilities of their stepchildren. The appellate court answered the certified questions in the negative, and we granted leave to appeal.

¶ 2                                      BACKGROUND

¶ 3        The facts of this case are straightforward. Matt Sharpe and Crystal Westmoreland were married and had a child, A.S. The marriage was dissolved in January 2013, and as part of that dissolution, Sharpe and Westmoreland agreed to a joint parenting agreement. The parents shared equal parenting time, but A.S.'s legal residence was with Sharpe. In November 2013, Sharpe entered into a civil union with Kris Fulkerson. A.S. continued to reside with Sharpe, Fulkerson, and Fulkerson's three children. Sharpe passed away on January 2, 2017. After Sharpe's death, Westmoreland no longer let A.S. live with or visit Fulkerson and Fulkerson's children, so Fulkerson filed petitions seeking visitation and an allocation of parental responsibilities for A.S.

¶ 4        The circuit court granted Fulkerson leave to intervene before granting Westmoreland's motion to certify a question of law to the appellate court and staying proceedings. Ill. S. Ct. R. 308 (eff. July 1, 2017). The court certified two questions: whether a party to a civil union has standing to request visitation with her deceased partner's child as a stepparent and whether that party has standing to request parental responsibilities. The appellate court answered both questions in the negative. 2019 IL App (5th) 170321, ¶ 11. After initially filing its decision as a Rule 23 order (Ill. S. Ct. R. 23(b) (eff. Apr. 1, 2018)), the appellate court granted Westmoreland's motion to publish. We granted leave to appeal. Ill. S. Ct. R. 315 (eff. July 1, 2018). We allowed the National Association of Social Workers and The Illinois Chapter of the American Academy of Matrimonial Lawyers to file *amicus curiae* briefs.

¶ 5                                      ANALYSIS

¶ 6        This appeal is from the appellate court's answers to two questions certified pursuant to Illinois Supreme Court Rule 308 (eff. July 1, 2017). "By definition,

certified questions are questions of law subject to *de novo* review." *Rozsavolgyi v. City of Aurora*, 2017 IL 121048, ¶ 21.

¶ 7    The Illinois Religious Freedom Protection and Civil Union Act (Civil Union Act) (750 ILCS 75/1 *et seq.* (West 2016)) defines a civil union as "a legal relationship between 2 persons, of either the same or opposite sex, established pursuant to this Act." *Id.* § 10. Individuals who are prohibited from marrying are also prohibited from entering into a civil union. Compare *id.* § 25, with 750 ILCS 5/212 (West 2016). Westmoreland does not dispute that Sharpe and Fulkerson validly entered into a civil union pursuant to the Civil Union Act. She likewise does not dispute that they remained civilly united at Sharpe's death. Rather, she argues that a party to a civil union is not married to her partner and cannot be a stepparent as defined by the Illinois Marriage and Dissolution of Marriage Act (Dissolution Act) (750 ILCS 5/101 *et seq.* (West 2016)). Therefore, Westmoreland argues, Fulkerson lacks standing under the Dissolution Act to petition for visitation and allocation of parental responsibilities.

¶ 8    We start by looking at the relevant statutory provisions. The Dissolution Act strictly limits who may file a petition for visitation or allocation of parental responsibilities for a child. Stepparents are treated somewhat preferentially in relation to other persons who are not the natural parent of the child in that they may seek an allocation of parental responsibilities under certain circumstances if the parent to whom he or she was married dies or becomes disabled. *Id.* § 601.2(b)(4). They may also seek visitation—a right granted to only three other classes of nonparents: grandparents, great-grandparents, and siblings—if one of the listed circumstances are present. *Id.* § 602.9(c)(1). The Dissolution Act defines a "step-parent" as "a person married to a child's parent, including a person married to the child's parent immediately prior to the parent's death." *Id.* §§ 600(*l*), 602.9(a)(3).

¶ 9    A party to a civil union is "a person who has established a civil union pursuant to [the Civil Union] Act." 750 ILCS 75/10 (West 2016). "[A]ny definition or use of the terms 'spouse', 'family', 'immediate family', 'dependent', 'next of kin', and other terms that denote the spousal relationship, as those terms are used throughout the law," includes a " '[p]arty to a civil union.' " *Id.* "A party to a civil union is entitled to the same legal obligations, responsibilities, protections, and benefits as are afforded or recognized by the law of Illinois to spouses, whether they derive

- 3 -

from statute, administrative rule, policy, common law, or any other source of civil or criminal law." *Id.* § 20. The Civil Union Act is to be "liberally construed and applied to promote its underlying purposes," which expressly include providing civil union partners with those obligations, responsibilities, protections, and benefits. *Id.* § 5.

¶ 10 To answer both certified questions, we must answer the same question of law: whether the legislature intended for a person civilly united to a parent to fit within the definition of a "step-parent" under the Dissolution Act. To do this, of course, we look to the statutory language, which, given its plain and ordinary meaning, is the most reliable indicator of the legislative intent. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 479 (1994). We give the words of a statute their plain, ordinary, and accepted meaning unless doing so would defeat the legislative intent. *Accettura v. Vacationland, Inc.*, 2019 IL 124285, ¶ 11.

¶ 11 In this case, the legislature expressly stated the purposes of the Civil Union Act, one of which is to "provide persons entering into a civil union with the obligations, responsibilities, protections, and benefits afforded or recognized by the law of Illinois to spouses." 750 ILCS 75/5 (West 2016). It expressed its intent that the Civil Union Act be liberally construed to promote that purpose. *Id.* It declared that the "legal obligations, responsibilities, protections, and benefits" to which a party to a civil union was entitled could "derive from statute, administrative rule, policy, common law, or any other source of civil or criminal law." *Id.* § 20. The legislative intent is thus clear and unambiguous: the General Assembly intended to create an alternative to marriage that was equal in all respects and, important at that time, open to two persons of the same sex. By way of the Civil Union Act, it changed the definition of the word "spouse" and any "other terms that denote the spousal relationship" throughout the Illinois Compiled Statutes to include a party to a civil union. *Id.* § 10.

¶ 12 Westmoreland argues that the Civil Union Act only refers to "obligations, responsibilities, protections, and benefits" of partners *vis-à-vis* each other. She argues that the legislative intent of the language equating civil union partners to spouses was that they be deemed equivalent only for purposes of their own relationships. She points to certain provisions in the Dissolution Act that reference

- 4 -

civil union partners, all of which, she claims, address the partners' rights in relation to one another.

¶ 13 Westmoreland does not cite any statutory provision in either act that expressly excludes a civil union partner from any obligation, responsibility, protection, or benefit to which a spouse is entitled. Rather, she relies on express references to the Civil Union Act in other provisions of the Dissolution Act and statements during a legislative debate of the Illinois House of Representatives. "When the drafters' intent can be ascertained from the statutory language, it must be given effect without resort to other aids for construction." *Illinois Graphics*, 159 Ill. 2d at 479. We find the language of the Civil Union Act clear and thus do not consider Westmoreland's arguments about the legislative history.

¶ 14 Moreover, she asks us to read a limitation into the statute. A "person married to a child's parent" (750 ILCS 5/600(*l*) (West 2016); *id.* § 602.9(a)(3)) is the parent's spouse. The Civil Union Act entitles a partner to a civil union to the "same legal obligations, responsibilities, protections, and benefits" as a spouse (750 ILCS 75/20 (West 2016)), even when the statute uses "other terms that denote the spousal relationship" (*id.* § 10) as the Dissolution Act does here. Nowhere in either act is that entitlement expressly limited in any way. "We do not depart from the plain language of the statute by reading into it exceptions, limitations, or conditions that conflict with the expressed intent." *Accettura*, 2019 IL 124285, ¶ 11. The limitation for which Westmoreland advocates conflicts with the Civil Union Act's expressed intent to put civil union partners on equal ground with spouses. We therefore decline Westmoreland's invitation to read this limitation into the statutes.

¶ 15 Westmoreland also argues that granting a natural parent's civilly united partner standing to intervene as a stepparent violates her constitutional right to parent her child. Parents have a fundamental liberty interest in raising and caring for their children, which includes the right to make decisions involving the care, custody, and control of their children. *In re N.G.*, 2018 IL 121939, ¶¶ 24-25 (citing *Troxel v. Granville*, 530 U.S. 57, 65-66 (2000)). Westmoreland does not challenge the Dissolution Act's grant of standing to stepparents as unconstitutional but rather argues that interpreting the statutes to allow a civilly united partner to request visitation and parenting time as a stepparent would unconstitutionally expand its scope.

¶ 16    We again note the legislature's intent in enacting the Civil Union Act was to create an alternative to marriage that is equal in all respects. No difference exists between a civil union and marriage other than the name, including the qualifications for entry into the relationship. We find that a civilly united partner is a "step-parent" as defined in the Dissolution Act. Because the General Assembly created an equivalent marriage alternative that is limited to individuals who are otherwise eligible to marry, we find that it did not expand the Dissolution Act's definition of "step-parent" and thus also find that granting Fulkerson's petitions would not result in an unconstitutional expansion of the scope of the Dissolution Act.

¶ 17    An important distinguishing factor between our analysis in this case and the relevant analysis in *In re Parentage of Scarlett Z.-D.*, 2015 IL 117904, is that Fulkerson and Sharpe entered into a state-sanctioned form of a committed relationship—which the legislature created and deemed equivalent in all respects to a marriage. Granting civilly united partners standing as stepparents will not, as Westmoreland argues, open the door to other parties who are otherwise not granted standing by the Dissolution Act. Rather, our holding today is limited only to those parties who have chosen to enter into a civil union instead of a marriage. This legal change was a policy decision made by the legislature, not the court. See *id.* ¶ 68 (noting that "[l]egal change in this complex area must be the product of a policy debate that is sensitive not only to the evolving reality of 'non-traditional' families and their needs, but also to parents' fundamental liberty interest embodied in the superior rights doctrine").

¶ 18    We express no opinion on the merits of the remainder of Fulkerson's petitions for visitation and allocation of parental responsibilities. We merely find that she is A.S.'s "step-parent" as defined by the Dissolution Act and therefore meets that aspect of the standing requirement therein.

¶ 19                                CONCLUSION

¶ 20    We find that, in enacting the Civil Union Act, the General Assembly intended to create an alternative to marriage that was equal in all respects. This intent was not limited to partners' rights as to each other. When a child's parent enters into a civil union with an individual who is not the child's other parent, that individual becomes the child's stepparent as defined by the Dissolution Act and thus meets

that aspect of the standing requirement to petition the court for visitation, allocation of parental responsibilities, or both as allowed therein. We answer both certified questions in the affirmative.

¶ 21        Certified questions answered.

¶ 22        Reversed and remanded.