**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 220306-U

Order filed August 4, 2022

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| STEPHEN R. KALMAR, | ) | Will County, Illinois. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | Appeal No. 3-22-0306 |
| and | ) | Circuit No. 2011-D-221 |
| | ) | |
| HEIDEE L. KALMAR, | ) | Honorable |
| | ) | Dinah L. Archambeault, |
| Respondent-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE O'BRIEN delivered the judgment of the court.
Justices Hauptman and Hettel concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Circuit court order granting a father's motion for a temporary restraining order and requiring minor son to attend intensive reunification program was upheld on interlocutory appeal where parenting time with the father was an ongoing issue and the son was defying court orders with his mother's assistance or indifference.

¶ 2    In a post dissolution of marriage proceeding, the respondent wife appealed from a circuit court order granting the petitioner husband a temporary restraining order, which mandated the enrollment of their minor child in reunification therapy on an emergency basis.

I. BACKGROUND

¶ 4        A petition to dissolve the marriage of the respondent wife, Heidee L. Kalmar, and the petitioner husband, Stephen R. Kalmar, was filed in 2011. They had two children during the marriage; M.K., who is the subject of this appeal, is currently 15 years old. An agreed final order allocating parenting rights and responsibilities was entered on January 8, 2013.

¶ 5        On August 28, 2019, an agreed final order allocating parenting rights and modifying the January 8, 2013, order was entered. Pursuant to the 2019 order, Heidee was allocated sole decision-making authority and Stephen's parenting time with both children was suspended until further order of the court. The 2019 order incorporated some prior court orders. One of those orders was a June 18, 2019, agreed order appointing a personal counselor, Dr. Mark McKee, for M.K. Pursuant to that order, McKee was required to make monthly reports regarding the "status of counseling, any suggestions as to session frequency, session duration or parenting time" between Stephen and M.K. The order specified that McKee was not a confidential counselor and could be called as a witness in the matter. The circuit court also incorporated and made part of the judgment an order entered on March 19, 2019. That order appointed Jeanette Siebens as an additional therapeutic reunification counselor relating to the reunification of Stephen and M.K. The order specifies that Siebens is also not a confidential counselor and may be called as a witness. Any prior court orders were modified to state that Heidee was to continue to attend sessions with Siebens, as recommended by Siebens, as long as M.K. was undergoing therapeutic reunification counseling sessions and the cost was covered by the insurance. The supporting record indicates that Warren Matson was previously appointed as a therapeutic reunification counselor for M.K. The August 28, 2019, order states that the parties understand and acknowledge that they are not bound by the recommendations of McKee, Siebens, and/or Matson regarding the status of counseling, any

suggestions as to session frequency, session duration or parenting time between Stephen and M.K. outside a clinical setting, and could file a petition regarding any recommendations. However, if the parties agreed with the recommendations, they could agree to them without court intervention. The court retained jurisdiction, particularly regarding parenting time and therapeutic reunification counseling.

¶ 6     On March 14, 2022, the circuit court entered an order addressing two petitions for a rule to show cause and an emergency motion to compel compliance, all filed by Stephen in late 2021. The circuit court found that there was no compelling cause or justification for Heidee to not ensure that M.K. attended sessions with McKee and Siebens, although Heidee was compliant with sessions between Dr. Olszewski and M.K. The court ordered that Olszewski continue to provide counseling and that the obligation to continue to see McKee was vacated. Heidee was ordered to continue to meet with Siebens as previously ordered. Both parties were ordered to comply with the recommendations of Siebens and Olszewski regarding the duration and frequency of sessions. The parties were ordered to continue to follow the recommendations of Olszewski as it related to parenting time and responsibilities pertaining to M.K., unless either party filed a motion as it related to the recommendations.

¶ 7     On May 12, 2022, the circuit court entered an order addressing a motion filed by Stephen to compel compliance with recommendations. The court ordered that M.K. have parenting time with Stephen for two weeks, from May 15-31, 2022. The court specified that it was awarding Stephen parenting time with M.K., not restricting Heidee's parenting time. The matter was continued until May 31, 2022, for status on Stephen's parenting time.

¶ 8     On May 19, 2022, Stephen filed an emergency motion for an *in camera* interview with M.K. and an emergency motion for a temporary restraining order (TRO) and/or a preliminary

3

injunction. Both motions alleged that M.K. refused to participate in the ordered parenting time with Stephen. The petition for the TRO further alleged that M.K. was thwarting the court order by going into Heidee's home and refusing to come out. The petition alleged that M.K.'s mental and physical health were at issue and that both M.K. and Stephen would suffer irreparable harm if M.K. was allowed to continue to thwart the court order and Heidee was allowed to let M.K. continue to do so. The petition also alleged that it was in M.K.'s best interests to enter the TRO and that Stephen was likely to succeed on the merits. On May 31, 2022, the circuit court ordered Heidee to bring M.K. for an *in camera* interview on July 6, 2022. M.K. attended the *in camera* interview and was scheduled for a second one on July 18, 2022. M.K. was ordered to attend a therapy session in the interim with Olszewski and Stephen, and bring to the court a plan for moving forward with reconciliation therapy.

¶ 9 While in court on July 25, 2022, the circuit court stated that it had done two *in camera* interviews with M.K based on the underlying issue before the court: the recommendations for reunification and parenting time with Stephen. A third *in camera* interview was planned, but M.K. did not go to therapy, so the *in camera* interview was cancelled. The circuit court stated that the goal of the *in camera* interview was to allow M.K. some input into a plan for reunification and parenting time with Stephen, although it noted that M.K. did not present a feasible plan. The circuit court described past efforts at reunification, which included counseling, and indicated that both attorneys had been given the opportunity to research intensive reunification programs in an attempt to repair the relationship between father and son. In light of that history, the circuit court found that it was in the best interests of M.K. to attend intensive reunification counseling with Stephen on an emergency basis. The court clarified that it was not restricting Heidee's parenting time; it was ordering the reunification program wherein recommendations would be made regarding

4

parenting time. Once those recommendations were made, the parties could agree to follow them or either party could bring a motion objecting to the recommendations that the court would hear instanter and make a ruling. A written order was entered the same day, directing the four-day intensive reunification program at Turning Points for Families in Texas with Loretta Maase, M.A., LPC-S, to begin on July 28, 2022. During the four-day sequestration period required by the program, Heidee was ordered to have no contact with M.K. Following the four-day program, Maase would give her recommendations for parenting time in writing. Other provisions in the order required Heidee to provide a letter addressed to M.K., indicating Heidee's support of the reunification program. It also required Heidee to engage in parent education with Maase during the four-day program and to engage with Siebens or any therapist recommended by Maase. Maase was authorized to communicate and collaborate with Heidee's therapist, and Heidee was ordered to execute all necessary authorizations or releases to facilitate this communication. Both parents were ordered to comply with the treatment protocol. Upon conclusion of the four-day program, M.K. was to reside with Stephen until further order of the court or recommendation of Maase.

¶ 10                                    II. ANALYSIS

¶ 11         Heidee filed an interlocutory appeal seeking to reverse the TRO entered on July 25, 2022. Heidee argues that the order was entered *sua sponte*, without a pending petition that specifically requested reunification therapy and without a hearing on the issue. Heidee contends that the order improperly suspended her parenting time and transferred custodial rights to Stephen without a hearing or a finding of serious endangerment. Heidee contends that the circuit court improperly placed the parenting time schedule in the hands of an unknown therapist, required Heidee to sign releases in violation of healthcare privacy laws, ordered Heidee to write a letter to M.K., and ordered Heidee to comply with the treatment protocol for the reunification program.

5

¶ 12    We have jurisdiction over this appeal pursuant to Supreme Court Rule 307(d), which provides for an interlocutory appeal as of right from "the granting or denial of a temporary restraining order or an order modifying, dissolving, or refusing to dissolve or modify a temporary restraining order." Ill. S. Ct. R. 307(d) (eff. Nov. 1, 2017).

¶ 13    A TRO is a drastic remedy, called for in only exceptional circumstances and for a brief duration, to preserve the *status quo* pending a hearing to determine whether the court should grant a preliminary injunction. *American Federation of State, County, and Municipal Employees v. Ryan*, 332 Ill. App. 3d 965, 966 (2002). To be entitled to temporary injunctive relief, a party must demonstrate that they: "(1) possess a protectable right; (2) will suffer irreparable harm without the protection of an injunction; (3) have no adequate remedy at law; and (4) are likely to be successful on the merits of their action." *Id.* at 966-967. We review a trial court's ruling on a TRO for an abuse of discretion. *Id.* at 967.

¶ 14    After reviewing the supporting record, we find that the circuit court did not abuse its discretion in granting Stephen's petition for a TRO and ordering that M.K. attend the four-day intensive reunification program. While Stephen's petition for a TRO did not specifically request reunification therapy, the issue of parenting time and reunification therapy was before the court as part of the ongoing proceedings regarding the relationship between M.K. and Stephen, recommendations for parenting time with Stephen, and M.K. and Heidee's refusal to comply with court orders.

¶ 15    Stephen has fundamental liberty interest in raising and caring for his minor son, which includes the right to make decisions involving his care, custody, and control. See *Sharpe v. Westmoreland*, 2020 IL 124863, ¶ 15. The circuit court's conclusion that Stephen and M.K. would suffer irreparable mental and physical harm if M.K. was allowed to continue to defy the

6

recommendations of counselors and therapists and the orders of the court was not an abuse of discretion. As the circuit court noted, other reunification methods had been attempted, and the intensive reunification program ordered by the court was an extreme measure in response to an emergency situation. Lastly, since parenting time had been recommended with Stephen, and it was already ordered by the court, Stephen was likely to be successful on the merits of his action for regular parenting time with M.K. The intensive reunification program was intended to effectuate that goal. The order's attendant requirements imposed upon Heidee, *i.e.*, the letter, compliance with the treatment program, counseling, and parenting education, were necessary to a successful program for M.K.

¶ 16 Heidee argues that the circuit court improperly restricted her parental responsibilities without holding a hearing or finding serious endangerment pursuant to section 603.10 of the Illinois Marriage and Dissolution of Marriage Act (the Act) (750 ILCS 5/603.10 (2018)). While the trial court order does not allow Heidee to contact M.K. for four days, and then directs that M.K. reside with Stephen until further order of the court or recommendation of Maase, at this point the order does not restrict Heidee's parenting time but rather effectuates the protocols of the intensive reunification program and grants parenting time to Stephen for a temporary amount of time. After the program concludes, and Maase makes her recommendations, then it will potentially be up to the court to hold a hearing and determine if there is cause to restrict Heidee's parenting time pursuant to section 603.10 of the Act.

¶ 17 Heidee argues that the order required her to sign releases in violation of healthcare privacy laws. However, we find no violation. The order only required her to sign releases to allow Maase to communicate and collaborate with Siebens (or any other therapist recommended by Maase). As

7

noted above, Siebens was not a confidential counselor, but rather was appointed for the purpose of the reunification proceedings, and court orders direct that Siebens could be called as a witness.

¶ 18                                III. CONCLUSION

¶ 19        The judgment of the circuit court of Will County is affirmed.

¶ 20        Affirmed.